[Cite as *Auto Recyclers of Middletown, Inc. v. Stein, L.L.C.*, 2025-Ohio-414.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| AUTO RECYCLERS OF MIDDLETOWN, INC., et al., | : | |
| | : | CASE NO. CA2024-07-089 |
| Appellants, | : | O P I N I O N |
| | : | 2/10/2025 |
| - vs - | : | |
| | : | |
| STEIN, LLC, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 10 1776

Kircher Law, LLC, and Konrad Kircher, for appellants, Auto Recyclers of Middletown, Inc. and Car Connection Ohio, Inc.

Gordon Rees Scully Mansukhani, LLP, and Robert P. Lynch, Jr., for appellee, Stein, LLC.

Frost Brown Todd LLP, and Matthew C. Blickensderfer, Ariel M. Fox, Simon Y. Svirnovskiy, and Theresa A. Canaday, for appellee, Cleveland-Cliffs Steel Corp.

**HENDRICKSON, J.**

{¶ 1} Plaintiffs-appellants, Auto Recyclers of Middletown, Inc. and Car Connection Ohio, Inc., appeal from a decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, Cleveland-Cliffs Steel Corp. and Stein, LLC, on plaintiffs' claims for nuisance, negligence, tortious interference with

business relationships, and trespass.[1]   For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2}   Plaintiffs are companies engaged in the parts salvage business and used car sales.  They operate along the south side of Oxford State Road in Middletown, Butler County, Ohio.  Cleveland-Cliffs has a steel manufacturing facility (Middletown Works) on the north side of Oxford State Road in Middletown.  Cleveland-Cliffs produces slag as a by-product of its steel manufacturing, and it provides the slag to Stein.[2]  Stein operates a slag dumping, cooling, handling, and processing facility on the south side of Oxford State Road in Middletown.  Cleveland-Cliffs owns the property on which Stein operates its business.  This property abuts or is in the vicinity of plaintiffs' businesses.

{¶ 3}   On December 4, 2022, plaintiffs filed an amended complaint against Stein and Cleveland-Cliffs asserting causes of action for nuisance, negligence, tortious interference with business relationships, and trespass.[3]   The complaint sought compensatory and punitive damages, as well as injunctive relief.  Plaintiffs alleged that "the illegal emissions of fugitive dust and other pollutants from defendants' operations" damaged plaintiffs' businesses as slag dust and residue accumulated on their inventories, which are stored on open lots on plaintiffs' properties.  Stein and Cleveland-Cliffs filed their respective answers to the complaint and the parties subsequently engaged in discovery.

---

1.  Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

2.  Slag is "the more or less completely fused and vitrified matter separated during the reduction of a metal from its ore." *Dictionary.com*, "slag" available at https://www.dictionary.com/browse/slag (accessed January 27, 2025).

3.  Plaintiffs' initial complaint was filed on October 26, 2022 and set forth the same causes of action as the amended complaint.

{¶ 4}    As the case proceeded, the trial court set a series of discovery deadlines. As pertinent to this appeal, pursuant to a March 7, 2023 pretrial order, the trial court set June 1, 2023 as the deadline for plaintiffs to disclose their expert witnesses and July 15, 2023 as the deadline for defendants to disclose their experts.  The trial court's pretrial order further provided as follows:

> *A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing party/counsel.  The report of Plaintiff's experts are due on June 1, 2023 and the report of Defendant's experts are due July 15, 2023.*  It is the party/counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion.  However, unless good cause is shown, all supplemental reports must be supplied no later than thirty days prior to trial.  *The report of an expert must reflect his opinions as to each issue on which the expert will testify.  An expert will not be permitted to testify or provide opinions on issues not raised in his report.*
> (Emphasis added.)

{¶ 5}    On or before June 1, 2023, plaintiffs filed their disclosure of expert witnesses.  Specifically, plaintiffs identified "Kurt Smith, Kerri Castlen, or Other Appropriate Representative" from the Hamilton County Environmental Services Agency as their experts "to testify . . . [about] their findings and opinions about Defendants' violations of environmental laws, rules, regulations, and guidelines."[4]  Plaintiffs did not file a written expert report.

{¶ 6}    On July 14, 2023, the parties filed a joint motion for extension of time, seeking a 90-day extension of the deadlines set forth in the court's pretrial order.  The trial

---

4. Plaintiffs' notice of expert disclosure was not filed with the trial court.  Plaintiffs and defendants are in agreement that the notice was filed by the June 1, 2023 deadline.  Plaintiffs' expert disclosure, titled "Plaintiffs' Identification of Expert Witnesses" was attached as an exhibit to Stein's and Cleveland-Cliffs' respective motions for summary judgment.  The certificate of service indicates the document was served on Stein and Cleveland-Cliffs on June 1, 2023.

court granted the extension and, on August 22, 2023, issued a new pretrial order in which it set February 26, 2024 as the deadline for plaintiffs to file their disclosure of expert witnesses and March 25, 2024 as the deadline for defendants to file their disclosure of experts. The court's pretrial order further provided that

> *[a] party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing party/counsel. The report must be supplied within 30 days after the disclosure of the expert. . . . The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.* (Emphasis added.)

Plaintiffs made no further disclosure of experts and did not provide any reports from the experts they had previously disclosed. Defendants disclosed their experts and provided reports in accordance with the second pretrial order.

{¶ 7} On April 22, 2024, Stein and Cleveland-Cliffs separately moved for summary judgment. Both argued that because plaintiffs had failed to produce an expert report, plaintiffs were precluded from presenting expert testimony at trial, thereby making it impossible to prove their case. Specifically, Stein and Cleveland-Cliffs argued that without an expert, plaintiffs could not prove that either Stein's or Cleveland-Cliffs' actions or inactions were the proximate cause of the dust and residue that purportedly damaged plaintiffs' businesses. Defendants further argued, with respect to plaintiffs' claims for tortious interference with business relationships, that plaintiffs were unable to demonstrate the existence of specific business relationships, that Stein or Cleveland-Cliffs were aware or intentionally interfered with such relationships, or that plaintiffs suffered any damages from the alleged interference with those relationships. Stein and Cleveland-Cliffs filed various exhibits and depositions in support of their motions for

summary judgment. Cleveland-Cliffs also filed a report from its expert, Ralph E. Morris, an air quality, meteorological and emissions data analysis and modeling subject matter expert. In his report, Morris opined as follows:

> Based on the review of the Amended Complaint, PM [particulate matter] sources in the region, meteorological conditions, source-receptor relationships between PM sources in the region, Plaintiffs' facility locations, data in documents and websites cited in this report, and my over 40 years' experience in air quality, emissions and meteorological data analysis and modeling, I have the following two opinions:
>
> 1. There are numerous sources of particulate matter in the region that could be contributing to the fugitive dust deposition on the Plaintiffs' inventory. The Plaintiffs have not conducted any type of analysis that identifies which sources are contributing to the PM deposition on the inventory in their facilities; and
>
> 2. The occurrence of wind directions that would transport dust emissions from the Cleveland-Cliffs Middletown Works to the Plaintiffs' auto parts/vehicle facility locations is infrequent, with the predominate wind direction coming from the opposite direction indicating the Middletown Works could not be the primary source of PM deposition at the Plaintiffs' facilities.

{¶ 8} Plaintiffs filed a memorandum in opposition to Stein's and Cleveland-Cliffs' motions for summary judgment in which they argued that defendants were trying to "exploit . . . a technical flaw in the disclosure of Plaintiffs' expert witnesses." Plaintiffs contended that they had timely identified their experts as being Kurt Smith, Kerri Castlen, or other appropriate representatives from the Hamilton County Environmental Protection Agency, also known as the Southwest Ohio Air Quality Agency ("SWOAQA"). Plaintiffs represented that during the course of discovery, they had "provided access to Defendants to thousands of pages of documents obtained by Plaintiffs from SWOAQA pursuant to

public records requests." Plaintiffs contended that as a result of these thousands of pages of documents and defendants' own interactions with SWOAQA over the years, during which time SWOAQA had investigated complaints and possible environmental violations, defendants had "full knowledge and awareness of the opinions and the bases of Plaintiffs' experts." Plaintiffs argued Stein and Cleveland-Cliffs were not prejudiced by the lack of an expert report and argued that in the ten months between plaintiffs' disclosure of their experts and the defendants' filing of their motions for summary judgment, defendants could have requested plaintiffs' expert reports, noted any deficiency in plaintiffs' identification or expert production, sent interrogatories or document requests regarding expert opinions or the basis thereof, sought to depose plaintiffs' experts, or suggested that their own experts had a lack of information about plaintiffs' positions in the case. Plaintiffs maintained that they should be permitted to present their experts' opinions. Alternatively, even if the court precluded them from presenting their experts' opinions, plaintiffs argued they could proceed on their claims as "expert testimony is not necessary as to questions of cause and effect which are so apparent to be matters of common knowledge." Relying on various emails exchanged between Stein and Cleveland-Cliffs, Notice of Violations from SWOAQA, and a proposed settlement document from the Ohio Environmental Protection Agency ("Ohio EPA") to Stein, plaintiffs argued genuine issues of material fact existed as to causation and the other elements of their causes of action.

{¶ 9} On June 28, 2024, the trial court issued a decision granting Stein's and Cleveland Cliff's motions for summary judgment. The court found that plaintiffs' claims "must fail as a matter of law" and concluded that plaintiffs had "willfully chose not to comply" with the Court's pretrial order regarding the disclosure of expert reports. The court stated, in pertinent part, the following:

It is not Defendants' responsibility to ensure Plaintiffs' compliance with the Court's order or to d[e]pose Plaintiffs' experts without a report. The language of the pretrial order is clear that it is incumbent upon Plaintiffs to procure a report from their expert and provide that report to Defendants. Plaintiffs willfully chose not to comply with this Court's pre-trial orders. Plaintiffs did not seek leave from this Court to provide records and not a report; nor did Plaintiffs seek leave to provide a report outside of time. Accordingly, as outlined in the pretrial order, Plaintiffs will not be permitted to call any expert witnesses.

{¶ 10} The trial court further determined, contrary to plaintiffs' arguments, that "the causal link between defendants' operations and plaintiffs' injury or damages is generally outside the knowledge of the average lay person," thereby necessitating expert testimony for all of plaintiffs' claims. The court stated,

Plaintiffs have no expert to testify, to a reasonable degree of scientific probability, that Defendants' operations are the source of the dust and other pollutants causing injury or damage to Plaintiffs. Thus, Plaintiffs are unable to meet their burden to demonstrate a question of fact exists that their injuries or damages were proximately caused by Defendants' operations. Their claims must fail as a matter of law.

The court further noted that Stein and Cleveland-Cliffs, through the production of Morris' report, had "met their burden" of demonstrating that "they are not the proximate cause of Plaintiffs' injuries and . . . that Plaintiff cannot produce the necessary expert evidence that Defendants' operations are the proximate cause of their injuries."

{¶ 11} Plaintiffs timely appealed the trial court's decision granting summary judgment to Stein and Cleveland-Cliffs, raising two assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING [PLAINTIFFS'] EXPERT WITNESSES.

{¶ 14} In their first assignment of error, plaintiffs argue the trial court erred when it held that they would not be permitted to call any expert witnesses due to their willful failure to comply with the court's pretrial order regarding the disclosure of expert reports. Plaintiffs argue the court abused its discretion by precluding them from presenting expert testimony on causation because Stein and Cleveland-Cliffs were "fully informed of SWOAQA opinions and their bases" due to discovery exchanges and their own interactions with SWOAQA throughout the years. Plaintiffs further argue that their failure to produce written expert reports did not prejudice Stein or Cleveland-Cliffs and the trial court's exclusion of plaintiffs' experts was too severe of a sanction.

{¶ 15} "Trial courts have broad discretion in managing their dockets, setting case schedules and imposing discovery sanctions for violations of court rules and scheduling orders, including the exclusion of expert witnesses who are not timely disclosed." *Sonis v. Rasner*, 2015-Ohio-3028, ¶ 40 (8th Dist.); *Haworth v. Roman*, 2023-Ohio-3816, ¶ 14 (2d Dist.). *See also Lykins v. Hale*, 2023-Ohio-752, ¶ 25 (12th Dist.) ("it is well established that trial courts have inherent power to manage their own dockets and the progress of the proceedings before them"). "Where a party fails to comply with discovery rules and deadlines, a trial court is within its discretion to exclude the offending evidence." *Gray v. Cincinnati Children's Hosp. Med. Ctr.*, 2024-Ohio-3168, ¶ 34 (1st Dist.). An appellate court uses an abuse of discretion standard when reviewing the trial court's imposition of a discovery sanction. *Haworth* at ¶ 14. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Lykins* at ¶ 18.

{¶ 16} Although plaintiffs identified "Kurt Smith, Kerri Castlen, or Other Appropriate Representative" from the Hamilton County Environmental Services Agency as their experts, plaintiffs never filed any expert reports. They also never sought leave to provide

an expert report outside of the deadline established by the court's August 22, 2023 pretrial order or sought leave from the trial court to provide various discovery records in place of an expert report. The trial court's pretrial order clearly established the penalty for failing to provide an expert report: "A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to the opposing party/counsel. . . . An expert will not be permitted to testify or provide opinions on issues not raised in his report." The trial court's decision to prohibit plaintiffs from presenting expert testimony due to their failure to provide an expert report is consistent with the trial court's fundamental power to manage its docket. *Haworth* at ¶ 15. It is also consistent with the Rules of Civil Procedure.

{¶ 17} Civ.R. 26(B)(7)(b) requires that "[t]he reports of expert witnesses to be called by each party . . . be exchanged with all other parties." The rule further requires that "parties . . . submit expert reports and curricular vitae in accordance with the time schedule established by the Court." *Id.* "[A] party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel." Civ.R. 26(B)(7)(c). "The report of an expert must disclose a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify," and "[a]n expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report." *Id.*

{¶ 18} Plaintiffs argue that their failure to present an expert report was not prejudicial as Stein and Cleveland-Cliffs had prior interactions with SWOAQA and had been given access to "thousands of pages of documents" obtained from SWOAQA. We find that the various documents plaintiffs provided during discovery do not serve as a substitute for producing an expert report. First, the documents do not include a curriculum vitae of any person identified as an "expert," preventing a determination of the individual's

qualifications to serve as an expert. Second, the documents fail to reflect an opinion, to a reasonable degree of scientific certainty, that Stein's and/or Cleveland-Cliffs' operations are the proximate cause of plaintiffs' alleged injuries. The documents, therefore, do not "disclose a complete statement of all opinions and the basis and reasons for them" as required by Civ.R. 26(B)(7)(c) or the trial court's pretrial order.

{¶ 19} Finally, contrary to arguments plaintiffs made below and repeated in their appellate brief, it is not Stein's or Cleveland-Cliffs' responsibility to comb through the voluminous documents exchanged during discovery to try and ferret out what portions relate to matters that plaintiffs' identified experts may testify about or rely on in providing their opinions. Likewise, it was not Stein's or Cleveland-Cliffs' duty to depose plaintiffs' experts without a report, to try and flush out the specifics of what they intended to testify about at trial.

{¶ 20} Given the circumstances presented in this case, where plaintiffs willfully chose not to comply with the trial court's pretrial order or Civ.R. 26 as it relates to the production of an expert report, we find that the trial court did not abuse its discretion in holding that plaintiffs were precluded from presenting any expert testimony. Plaintiffs' first assignment of error is, therefore, overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [DEFENDANTS] WHEN THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING CAUSATION.

{¶ 23} In their second assignment of error, plaintiffs argue the trial court erred by granting summary judgment to Stein and Cleveland-Cliffs on plaintiffs' claims of nuisance, negligence, tortious interference with business relationships, and trespass. Plaintiffs maintain that even without expert opinion on causation, the documentation from

SWOAQA is sufficient to establish genuine issues of material fact concerning causation. In plaintiffs' view, expert testimony is not required in the present case as the "questions of cause and effect . . . are so apparent as to be matters of common knowledge."

{¶ 24} "An appellate court's examination of a trial court's decision to grant summary judgment is subject to de novo review." *French v. New Paris*, 2011-Ohio-1309, ¶ 17 (12th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). De novo review means that this court uses the same standard that the trial court should have used and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Morris v. Dobbins Nursing Home*, 2011-Ohio-3014, ¶ 14 (12th Dist.).

{¶ 25} Civ.R. 56 sets forth the summary judgment standard. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 26} The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, LLC*, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party "'must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-

4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium Med. Ctr.*, 2019-Ohio-447, ¶ 10 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Id*.

{¶ 27} Stein and Cleveland-Cliffs moved for summary judgment on all of plaintiffs' causes of action—nuisance, negligence, tortious interference with business relationships, and trespass.

### Nuisance

{¶ 28} Nuisance is a term used to designate "the wrongful invasion of a legal right or interest." *Brackett v. Moler Raceway Park, L.L.C.*, 2011-Ohio-4469, ¶ 15 (12th Dist.). "A 'private nuisance' is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Nithiananthan v. Toirac*, 2015-Ohio-1416, ¶ 32 (12th Dist.). "In order for a private nuisance to be actionable, the invasion must be either intentional and unreasonable or unintentional but caused by negligent, reckless, or abnormally dangerous conduct." *Id.* Additionally, the "injury must be real, material, and substantial." *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 17.

### Negligence

{¶ 29} "To establish a negligence claim, the plaintiff must demonstrate (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of the defendant's breach, the plaintiff was injured." *Oliphant*, 2020-Ohio-229 at ¶ 32. "The proximate cause of an event is generally thought of as 'that which in a natural and continuous sequence, unbroken by any new independent cause, produces that event and without which that event would not have occurred.'" *Orren v. BWF Corp.*, 2015-Ohio-62, ¶ 16 (12th Dist.), quoting *Morgan v. Ramby*, 2012-Ohio-763, ¶ 25 (12th Dist.). Proximate cause "contemplates a 'probable'

or 'likely' result, not merely a 'possible' one," and therefore, the issue of proximate cause is not subject to speculation or conjecture. *Id.*, citing Morgan at ¶ 25. Plaintiffs' inability to prove any one element of negligence is fatal to their claim. *Oliphant* at ¶ 32.

**Tortious Interference with Business Relationships**

{¶ 30} "'The elements essential to recovery for tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.'" *Ginn v. Stonecreek Dental Care*, 2015-Ohio-1600 ¶ 11 (12th Dist.), quoting *Wolf v. McCullogh-Hyde Mem. Hosp.*, 67 Ohio App.3d 349, 355 (12th Dist. 1990). With respect to the second element, constructive knowledge is not sufficient to sustain a cause of action for tortious interference; actual knowledge is required. *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 29 (7th Dist.); *Becker v. Cardinal Health, Inc.*, 2021-Ohio-3804, ¶ 28 (10th Dist.).

**Trespass**

{¶ 31} Ohio recognizes both direct and indirect trespass. Indirect trespass occurs "when a defendant's actions causes a substance to intrude on the plaintiff's land and the substance causes substantial damages." *Meranda Nixon Estate Wine, L.L.C. v. Cherry Fork Farm Supply Co.*, 2024-Ohio-1523, ¶ 96 (12th Dist.). To prove a claim of indirect trespass caused by airborne pollutants, "'a plaintiff must show (1) an invasion affecting an interest in the exclusive possession of his property, (2) an intentional doing of the act which results in the invasion; (3) a reasonable foreseeability that the act done could result in an invasion of the plaintiff's possessory interest; and (4) *substantial damages* to the res.'" (Emphasis in original.) *Id.* at ¶ 97, quoting *Williams v. Oeder*, 103 Ohio App.3d 333, 339 (12th Dist. 1995).

**Discussion of Summary Judgment**

{¶ 32} All of plaintiffs' claims are predicated on Stein's and Cleveland-Cliffs' operations creating "illegal emissions of fugitive dust and other pollutants" that are deposited on plaintiffs' inventories, causing damages and interfering with their business relationships. Therefore, to prevail on each of their causes of action, plaintiffs must be able to show that Stein's and Cleveland-Cliffs' actions or omissions caused the complained of particulate matter. Plaintiffs' dispute that an expert is needed to establish causation and in support of their position, cite to the Supreme Court's decision in *Darnell v. Eastman*, 23 Ohio St.2d 13 (1970). There, the Court found that "[e]xcept as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of casual connection between an injury and a specific subsequent disability involves a scientific injury and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from consideration of the jury." *Id.* at syllabus. Plaintiffs maintain that various documents and reports from SWOAQA are sufficient to establish causation, even without an expert.

{¶ 33} "[T]the supreme court has already answered the question of when expert testimony is needed. 'In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required.'" *Meranda Nixon Estate Wine*, 2024-Ohio-1523 at ¶ 96, quoting *Berdyck v. Shinde*, 66 Ohio St.3d 573, 581 (1993). "Conversely, where a negligence action involves the skill and judgment of a licensed professional or relates to information outside the knowledge of a layperson, expert testimony is required." *Id.*; see also Evid.R. 702. In the present case, the slag processing and steel manufacturing processes, the types of particulate matter created through those processes, the common tools or procedures used for containing particulate

- 14 -

matter created through those processes, and the frequency or manner in which particulate matter travels during steel manufacturing or slag processing are areas outside the general knowledge of a lay person. Expert testimony is required to show that Stein's or Cleveland-Cliffs' actions or omissions during slag processing or steel manufacturing created the "fugitive dust and other pollutants" plaintiffs claim entered their property, harmed their inventories, and interfered with their business relationships. As plaintiffs are precluded from presenting expert opinions due to their failure to comply with the trial court's pretrial order and Civ.R. 26, they are unable to demonstrate to a reasonable degree of scientific probability that Stein's or Cleveland Cliff's operations are the source of the "fugitive dust" or particulate matter causing their injuries.

{¶ 34} Furthermore, the documents plaintiffs seek to rely on to establish a genuine issue of material fact as to causation—various emails exchanged between Stein and Cleveland-Cliffs, Notice of Violations from SWOAQA and a proposed settlement document sent to Stein from the Ohio EPA—are insufficient to create a genuine issue of material fact as to causation. "Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment." *State ex rel. Varnau v. Wenninger*, 2011-Ohio-3904, ¶ 7 (12th Dist.), citing *Spier v. American Univ. of the Caribbean*, 3 Ohio App.3d 28, 29 (1st Dist. 1981). Those materials are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). "[A] party may properly introduce evidence not specifically authorized by Civ.R. 56(C) by incorporating it by reference through a properly framed affidavit pursuant to Civ.R. 56(E)." *Wilson v. AIG*, 2008-Ohio-5211, ¶ 29 (12th Dist.); *Wenninger* at ¶ 7. "When ruling on a motion for summary judgment, a trial court generally may consider only evidence that would be admissible at trial." *Turnmire v. Turnmire*, 2022-Ohio-3968, ¶ 24 (12th Dist.).

{¶ 35} Plaintiffs attempted to introduce emails exchanged between Stein and Cleveland-Cliffs, Notices of Violations from SWOAQA, and a proposed settlement document between Stein and the Ohio EPA using an affidavit from their counsel. In his affidavit, plaintiffs' counsel represents that he obtained "thousands of pages of public records . . . from the Hamilton County EPA over [the last] decade or so" and the documents attached to his affidavit are "true and accurate cop[ies] of document[s]" produced during discovery.

{¶ 36} Notably, counsel is not the author or creator of the records. He therefore lacks personal knowledge as to the content of the documents. *See* Civ.R. 56(E). Personal knowledge is defined as "knowledge of the truth in regard to a particular fact or allegation, which is original and does not depend on information or hearsay." *Re v. Kessinger*, 2008-Ohio-167, ¶ 32 (12th Dist.). "Hearsay statements, i.e. statements other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted, are not admissible evidence in a summary judgment context unless an exception to the hearsay rule applies. Evid.R. 801(C)." *Koop v. Speedway SuperAmerica, LLC*, 2009-Ohio-1734, ¶ 11 (12th Dist.).

{¶ 37} Plaintiffs represent that the majority of the documents they have presented are public records or business records from SWOAQA or the Ohio EPA and should be admitted as an exception to the hearsay rule. "To qualify for admission under Evid.R. 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" *Wenninger*, 2011-Ohio-3904 at ¶ 13, quoting *State v. Glenn*, 2009-Ohio-6549, ¶ 17 (12th Dist.). "'[P]rior to admission of a

business record, the record must be properly identified or authenticated by evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *Id.*, quoting *Glenn* at ¶ 18. In the present case, no foundation has been laid by the custodian of the records or some other qualified witness. The documents were not accompanied by an affidavit from a representative of SWOAQA or the Ohio EPA and they were never identified and admitted as an exhibit to any of the depositions submitted into evidence by the parties. The documents are hearsay and, as submitted by plaintiffs, do not qualify for admission as a business record.

{¶ 38} Similarly, documents purporting to be public records must also be authenticated as such. Evid.R. 902 states, in relevant part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . .
>
> **(4) Certified copies of public records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, *certified as correct by the custodian or other person authorized to make the certification,* by certificate complying with the law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio. (Emphasis added.)

The documents attached to plaintiffs' counsel's affidavit were not certified as public records. As such, they do not qualify for admission as a public record.

{¶ 39} Despite the fact that the documents attached to their brief in opposition to summary judgment are not materials identified in Civ.R. 56(C) that a court may consider when deciding summary judgment, plaintiffs argue the documents should be considered as neither Stein nor Cleveland-Cliffs moved to strike the documents. Generally, "'it is within the trial court's discretion to consider nonconforming evidence when there is no

objection.'" *New Paris*, 2011-Ohio-1309 at ¶ 11, quoting *Chamberlin v. Buck Youngstown, Co.*, 2003-Ohio-3486, ¶ 7 (7th Dist.). However, "it is . . . well-within [a] court's discretion to ignore documents that do not comply with Civ.R. 56." *Id.*, citing *Ohio City Orthopedics, Inc. v. Medical Billing and Receivables, Inc.*, 2003-Ohio-1881, ¶ 5, fn. 1 (8th Dist.). In cases where improper Civ.R. 56(C) evidence was submitted and there was no objection by the parties, this court has found it appropriate to rely on such documents where it could be ascertained that the trial court reviewed and relied on specific documents. *See, e.g., Meranda Nixon Estate Wine*, 2024-Ohio-1523 at ¶ 48 (finding it appropriate to consider nonconforming summary judgment evidence where "it appear[ed] that the trial court considered" the exhibits in ruling on summary judgment, "mentioning some exhibits by name"); *New Paris* at ¶ 12 (finding it was appropriate to consider the nonconforming evidence that was "reviewed and considered by the trial court," but refusing to consider evidence that "the record does not specifically indicate were considered by the court in reaching its decision on summary judgment"). However, in those instances where the nonconforming summary judgment evidence is hearsay and is not based on personal knowledge, this court has found that an appellate court should disregard the evidence on its de novo review of summary judgment. *See Turnmire*, 2022-Ohio-3968 at ¶ 29 (excluding from appellate consideration on plaintiff's genuine-issue-of-material-fact argument, deposition testimony from plaintiff because said evidence "is hearsay and because it is not based on her personal knowledge").

{¶ 40} In the present case, the documents attached to plaintiffs' counsel's affidavit are hearsay evidence that are not based on counsels' personal knowledge. None of the documents were specifically identified, mentioned, or relied upon by the trial court in reaching its decision on summary judgment. It is therefore appropriate to disregard the documents as being nonconforming summary judgment evidence. Accordingly, the

documents do not serve to raise a genuine issue of material fact regarding whether Stein's or Cleveland-Cliffs' actions or omissions were the proximate cause of the complained of particulate matter.

{¶ 41} The arguments plaintiffs set forth in their second assignment of error are without merit and the assignment of error is hereby overruled.  Summary judgment was appropriately rendered in Stein's and Cleveland-Cliffs' favor on all of plaintiffs' causes of action.

{¶ 42}  Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.